UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
VAUGHN P. SEALES,                       )
                                        )
        Petitioner,                     )
                                        )
v.                                      )        Civil No. 13-11483-LTS
                                        )
MICHAEL THOMPSON,                       )
                                        )
        Respondent.                     )
_____)

MEMORANDUM AND ORDER ON PETITION FOR HABEAS CORPUS

June 18, 2015

SOROKIN, J.

        Petitioner Vaughn P. Seales, a prisoner at the Massachusetts Correctional Institution in

Concord, Massachusetts, has filed a pro se petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254, in which he raises nine challenges to his convictions and sentences. Doc. No. 1.

The respondent has opposed the petition. Doc. No. 17. For the reasons that follow, Seales's

petition is DENIED, as each of his claims is either meritless, not cognizable, or procedurally

defaulted.

I.      BACKGROUND

        On February 24, 2010, following a jury trial, Seales was convicted of armed assault with

intent to murder and eleven other charges arising from a string of domestic disputes with the

mother of his children.[1] Commonwealth v. Seales, 978 N.E.2d 106, 2012 WL 5430953, at *1

_____
[1] The other charges were: two counts of kidnapping; two counts of assault and battery by means
of a dangerous weapon ("ABDW"), specifically, lighter fluid and a mop; three counts of assault
and battery ("A&B"); two counts of assault and battery in violation of a restraining order
("ABVRO"); and two counts of violating a restraining order ("VRO"). Doc. No. 1 at 1.

(Mass. App. Ct. Nov. 8, 2012) (unpublished memorandum and order). He was sentenced to an aggregate term of six-to-eight years' incarceration with a concurrent eight-year term of probation, followed by five years of supervised probation. S.A. at 1185.[2]

The charges against Seales related to a series of domestic disputes with Marietta Dussourd, the mother of his two children. After dating for several years, the couple and their daughters moved into an apartment in Malden, Massachusetts, in December 2007. S.A. at 539-40, 548. Later that month, according to Dussourd, Seales struck her in the face during an argument. Id. at 544. This incident formed the basis of one A&B charge. Id. at 112. Dussourd did not report the incident at that time, and the two remained together. Id. at 545, 547.

In February 2008, the couple argued again. This time, Dussourd testified, Seales threw a glass at her; the two hit each other with a mop; Seales chased Dussourd and hit her with his hands; he pushed her against a wall and placed a screwdriver at her neck; he tore her clothes while punching her face, arms, and legs; she hit his head against a bedpost; he doused her with lighter fluid and unsuccessfully attempted to light her on fire; and he threatened to kill her. Id. at 549-60, 680. After the series of physical altercations ended, Seales took Dussourd's wallet, identification, and keys, and stayed home to monitor her movements and activities for three days. Id. at 560. This incident formed the basis of the assault with intent to murder charge, one kidnapping charge, two ABDW charges,[3] and one A&B charge. Id. at 103-04, 108-09, 113. Dussourd did not seek medical attention or report this incident to police. Id. at 562-63. Once again, the two remained together. Id. at 564.

---

[2] The respondent has filed a Supplemental Answer (cited herein as "S.A.") containing the state-court record in three bound volumes. See Doc. No. 16.

[3] These two charges related to use of the lighter fluid and the mop. Seales was acquitted of a third ABDW charge, related to the screwdriver. See S.A. at 107-09, 1149-50.

Dussourd described another argument, about a month later, during which Seales again struck her in the face. Id. at 564, 567. This incident formed the basis for an A&B charge. Id. at 114. This time, Dussourd did make a report to police and obtained a restraining order prohibiting Seales from contacting her or abusing her. Id. at 567. In August 2008, Dussourd initiated contact with Seales, despite the fact that the restraining order remained in force. Id. at 687. Then, at Dussourd's request, the restraining order was modified in October 2008 to permit contact between Seales and Dussourd, though it continued to prohibit abuse. Id. at 572, 576-77. Less than two weeks later, according to Dussourd, the couple had a loud argument during which Seales struck Dussourd's face and leg. Id. at 578-81. This incident formed the basis for one ABVRO charge and one VRO charge. Id. at 116-17. This time, neighbors called the police, and officers came to the Malden apartment. See id. at 582. Although Dussourd concealed her injuries and did not report the incident then, she did ask police to instruct Seales to leave the apartment and not return. Id. at 582-84. Days later, the couple reconciled, and Seales returned to their home. Id. at 586, 589-90, 878-80.

A few days before Thanksgiving 2008, when Seales failed to fulfill his obligation to participate in services provided for the family by the Department of Children and Families ("DCF"), Dussourd ended the relationship. Id. at 591-92. After a night out with friends on Thanksgiving eve, Dussourd returned home in the early morning hours of Thanksgiving and got into an argument with Seales on the phone. Id. at 592-96. Dussourd testified that, mid-argument, Seales burst into her bedroom, threw her phone against a wall, and beat her so severely that she blacked out briefly. Id. at 598. He then instructed her to pack some things, led her to his car, and drove her to his mother's apartment in Boston. Id. at 599, 605-06. According to Dussourd, Seales forced her to leave a message for her mother, who was watching Dussourd's

daughters and was expecting her to join them for Thanksgiving dinner, saying she was still out with friends.  Id. at 612-13.  The day after Thanksgiving, when Seales took a shower and left Dussourd alone in his bedroom, Dussourd took her cell phone and fled.  Id. at 615-16.  Dussourd contacted her sister, who happened to be in the area at the time, and arranged to meet her.  Id. at 616-17.  Although Seales eventually chased after Dussourd and caught her, Dussourd's sister and a nearby police officer intervened, and Seales ran away.  Id. at 617-19.  This incident formed the basis for one kidnapping charge, one ABVRO charge, and one VRO charge.  Id. at 105, 115, 118.  Police interviewed Dussourd and photographed her injuries following the incident.  Id. at 619-20.

At trial, the prosecution offered testimony from Dussourd, her mother, her sister, a friend who stayed with her after the March incident, a friend who went out with her on Thanksgiving eve, six police officers and detectives who responded to or investigated the various incidents at issue, and the DCF caseworker assigned to assist the family.  The defense called one additional police officer and pursued two main theories: first, that Dussourd's accounts of the incidents were largely uncorroborated and were not credible; and second, that the police investigation into the incidents was inadequate.

In April 2009, Seales was indicted on sixteen offenses based on the foregoing series of events.  Id. at 103-18.  The trial court directed verdicts in his favor as to two of the charges, and the jury convicted him of twelve charges and acquitted him of two others following trial.[4]  Id. at 1148-52.  At Seales's sentencing, the trial court dismissed one count of VRO, finding it

---

[4] The trial court directed "not guilty" verdicts on a breaking and entering charge and a witness intimidation charge at the close of the prosecution's case and after closing arguments, respectively.  S.A. at 1014, 1064.  The jury acquitted Seales of attempted arson of a dwelling and one count of ABDW (screwdriver).  Id. at 1149.

duplicative of the ABVRO charge for the same date (October 17, 2008), id. at 116-17, 1166, and

placed the other count of VRO on file without imposing a sentence on it, id. at 1165-66. See

Seales, 2012 WL 5430953, at *1 n.1 & *2 n.9.

Seales filed a timely direct appeal presenting ten issues, the following nine of which he

has essentially repeated here as his federal habeas claims:

1. Whether the evidence at trial was insufficient to support a conviction for assault
   with intent to murder, where there was no evidence showing intent to kill or
   disproving mitigation;

2. Whether the trial court erred in refusing to instruct the jury that Seales could be
   convicted of assault with intent to murder only upon proof that there were no
   factors mitigating his behavior, where Dussourd admitted to striking Seales with a
   mop and hitting his head against a bed post;

3. Whether the trial court erred in admitting evidence of prior bad acts;

4. Whether the trial court erred in admitting evidence of Dussourd's mental state;

5. Whether the trial court erred in allowing a DCF caseworker to testify that she
   instructed Dussourd to remove her children from Seales's presence, where such
   testimony essentially vouched for the prosecution and suggested Seales was
   dangerous;

6. Whether the trial court created a substantial risk of a miscarriage of justice by
   giving the jurors some, but not all, of her instructions in writing;

7. Whether the trial court created a substantial risk of a miscarriage of justice by
   reversing the burden of proof in her written jury instructions;

8. Whether the trial court created a substantial risk of a miscarriage of justice by
   failing to fully and forcefully instruct the jury regarding the presumption of
   innocence; and

9. Whether the Due Process and Double Jeopardy clauses were violated where
   Seales was convicted of: (a) both A&B and ABDW arising from the February
   2008 incident; and (b) both VRO and ABVRO arising from the October and
   November 2008 incidents.

<u>See</u> S.A. at 44-46.[5]  On November 8, 2012, in an unpublished decision, the Massachusetts

Appeals Court ("MAC") affirmed Seales's convictions and sentences.  <u>See generally</u> <u>Seales</u>,

2012 WL 5430953.  Seales petitioned the Supreme Judicial Court ("SJC") for further review,

citing the same nine issues he presented to the MAC and repeats here.  S.A. at 283-85.  The SJC

denied further review on February 1, 2013.  S.A. at 13.  Seales did not petition the Supreme

Court for certiorari, nor did he pursue any collateral challenges to his conviction in state court

via a motion for a new trial.  Instead, he reiterated his direct appeal claims in a timely pro se

federal habeas petition.[6]  Doc. No. 1 at 5-16.  His petition is fully briefed and ripe for resolution.

II.    DISCUSSION

As set forth in detail in the sections that follow, Seales is not entitled to federal habeas

relief.  Three of his claims are meritless, four present questions of state law that are not

cognizable here, and two are procedurally defaulted.

A.    Meritless Claims

1.    *Legal Standard*

Federal district courts may not grant a writ of habeas corpus unless they find that the state

court's adjudication of the petitioner's claims "(1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States[,] or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court

---

[5] The tenth claim Seales raised on direct appeal, not repeated here, concerned whether a remand for resentencing would be necessary if some, but not all, convictions were reversed.  S.A. at 46.
[6] In his memorandum of law, Seales preliminarily suggests all of his claims arise under the Due Process clause.  Doc. No. 17 at 1.  His submissions to the MAC and the SJC – all of which were filed with the assistance of counsel – did not state a federal constitutional basis for many of Seales's claims.  <u>See generally</u> S.A. at 34-94, 240-64, 266-95.  This fact raises exhaustion problems for certain of Seales's claims.  <u>See</u> § II(C), <u>infra</u>.

proceeding." 28 U.S.C. § 2254(d). In other words, state court decisions merit substantial deference. As the Supreme Court repeatedly has emphasized, such deference results in a federal habeas corpus standard that is "difficult to meet," with the petitioner carrying a heavy burden of proof. Harrington v. Richter, 562 U.S. 86, 102 (2011); accord Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011); see Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013) (emphasizing the "formidable barrier" faced by federal habeas petitioner where claims already were adjudicated in state court, and limiting relief to cases of "extreme malfunctions" by state criminal justice systems).

If a state court's decision "was reasonable, it cannot be disturbed" on habeas review. Hardy v. Cross, 132 S. Ct. 490, 495 (2011) (per curiam); see Parker v. Matthews, 132 S. Ct. 2148, 2149 (2012) (per curiam) (admonishing federal habeas courts not to "second-guess the reasonable decisions of state courts" (internal quotation and citation omitted)). When applying this strict standard, federal courts must presume that the state court's factual findings are correct, unless the petitioner has rebutted that presumption with clear and convincing evidence. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340-41 (2003); accord Teti v. Bender, 507 F.3d 50, 57 (1st Cir. 2007).

A state court ruling is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). The state court is not required to cite, or even have an awareness of, governing Supreme Court precedents, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); cf.

Richter, 562 U.S. at 100 (stating "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference).

For a habeas petitioner to prevail under this exacting standard, the state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court. Williams, 529 U.S. at 404-05; see Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). In a string of recent decisions summarily reversing grants of habeas relief by lower federal courts, the Supreme Court has "repeatedly emphasized" that "circuit precedent does not constitute 'clearly established Federal law'" for purposes of § 2254(d)(1). Glebe v. Frost, 135 S. Ct. 429, 431 (2014); see also, e.g., Lopez v. Smith, 135 S. Ct. 1, 4 (2014) (warning against using circuit precedent to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced" (internal quotation and citation omitted)).

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule, but "unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08. When making the "unreasonable application" inquiry, federal habeas courts must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. An unreasonable application of the correct rule can include the unreasonable extension of that rule to a new context where it should not apply, as well as an unreasonable failure to extend the rule to a new context where it should apply. Id. at 407. It cannot, however, include a decision by a state court not "to apply a specific legal rule that has not been squarely established by [the Supreme Court]." Knowles, 556 U.S. at 122. "The more general the rule, the more leeway

courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

A showing of clear error is not sufficient for a habeas petitioner to establish entitlement to relief. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); accord McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc). Rather, relief is available only where a state court's "determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Brown v. Ruane, 630 F.3d 62, 67 (1st Cir. 2011); see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam) (emphasizing that a habeas court "may not overturn a state court decision . . . simply because the federal court disagrees with [it]"); Richter, 562 U.S. at 103 (requiring a petitioner to "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement").

2.    *Claim 1*

Seales's first claim attacks the sufficiency of evidence supporting his conviction for assault with intent to murder, a charge which arose from his use of lighter fluid during the February 2008 incident. He essentially argues there was insufficient proof that he possessed a specific intent to cause Dussourd's death – one of three elements of the crime under Massachusetts law – where Dussourd was not actually burned and the lighter fluid was never ignited. See Doc. No. 17 at 15-16. He characterizes testimony that he threatened to kill Dussourd as evidence of an "empty statement [made] out of frustration." Id. at 16 (quoting United States v. Jimison, 493 F.3d 1148, 1150 (9th Cir. 2007)).

The MAC considered and rejected this claim on its merits. According to the MAC, Seales's sufficiency claim "ignores the potent evidence of words from his own mouth stating, in

no uncertain terms and after dousing the victim with lighter fluid and attempting to ignite it, 'I'm going to fucking kill you, bitch.'"  Seales, 2012 WL 5430953, at *1 (quoting S.A. at 559).  The MAC concluded that this statement, as recounted by Dussourd, "was more than sufficient to permit the jury to conclude that [Seales] possessed the requisite intent to kill."  Id.

The MAC's determination was neither contrary to, nor an unreasonable application of, clearly established federal law.  Pursuant to the limited scope of federal habeas review, the Court "do[es] not ask, as [it] might on direct review of a conviction in federal court, whether the evidence was constitutionally sufficient.  [It] ask[s], instead, whether the state courts' ruling that the evidence is constitutionally sufficient was itself 'unreasonable.'"  Winfield v. O'Brien, 775 F.3d 1, 8 (1st Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1)).  The relevant "clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), for purposes of a sufficiency challenge is Jackson v. Virginia, 443 U.S. 307 (1979).  See Winfield, 775 F.3d at 7.  Under Jackson, a petitioner prevails on a sufficiency-of-evidence claim only if he demonstrates that, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  443 U.S. at 319.  Jackson requires "a federal habeas court faced with a record of historical facts that supports conflicting inferences [to] presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and [to] defer to that resolution."  Id. at 9.

The MAC concluded that Dussourd's trial testimony regarding Seales's actions and statements during the February 2008 incident – testimony which the jury apparently credited, a determination neither the MAC nor this Court is empowered to second-guess – was sufficient to support a finding of specific intent to kill and permit a conviction for assault with intent to

murder. This Court's own review of the record confirms that the MAC's decision was a reasonable one, and was fully consistent with the sufficiency principles articulated in Jackson. Even if one might infer that Seales's announcement of his intention to kill Dussourd was merely an "empty statement" borne out of momentary anger or frustration, the facts also plainly support the inference suggested by the MAC and apparently drawn by the jury – that Seales possessed a specific intent to kill Dussourd. This Court is obligated to "defer to that resolution." Id. Accordingly, Seales is not entitled to habeas relief on his first claim.

Briefly in his petition, as well as in his direct appeal to the MAC, Seales also suggested the evidence was insufficient to establish intent to kill because Dussourd admitted she fought back during the course of the incident – at one point striking Seales with a mop when he charged at her, and later hitting his head against a bedpost when he tore off her clothes during a physical struggle on their bed. Doc. No. 1 at 5; S.A. at 73-74. This evidence, according to Seales, triggered a burden on the prosecution to demonstrate that Seales's use of the lighter fluid did not occur during "sudden combat or [following] reasonable provocation." S.A. at 73; see Seales, 2012 WL 5430953, at *1.

Insofar as his sufficiency claim is concerned, Seales's failure to cite any law on this point or to even include this theory in his memorandum of law suggests he may have abandoned or waived the theory here. See Doc. No. 17 at 14-16. In any event, no precedent of the Supreme Court has defined or endorsed the burden-shifting scheme applied under Massachusetts law where mitigation is raised by a defendant accused of assault with intent to murder. Moreover, the only reasonable view of the evidence at trial, considered in the light most favorable to the prosecution, is not that Dussourd's own violent behavior provoked Seales and mitigated his behavior, as Seales claims. Rather, the MAC reasonably concluded any rational trier of fact

would have found that although Seales's barrage of attacks on Dussourd caused her to attempt to defend herself, Seales's expressed intent to kill Dussourd "did not arise from the frailty of human nature in the face of reasonable provocation or sudden combat."  Seales, 2012 WL 5430953, at *1.  In other words, Seales's alternate theory in support of his sufficiency claim – to the extent it is properly before the Court – is also meritless.

         3.     *Claim 8*

Seales alleges the trial court's final charge to the jury provided inadequate guidance regarding the presumption of innocence.[7]  Doc. No. 1 at 15.  The relevant portions of the trial court's instruction stated:

> Mr. Seales, as any defendant in any criminal case, is presumed to be innocent. And that legal presumption of innocence isn't some id[le] theory that you can think about for a minute and then easily cast aside.  No defendant is to be found guilty on suspicion, conjecture, but only upon evidence put before you in the courtroom.  So the fact that a defendant may have been arrested or indicted is not to be regarded by you as a circumstance tending to incriminate him. . . .

> You will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or the duty of calling any witness or producing any evidence.  Now I'm sure you've noticed that the defendant did not testify in this case.  He has no obligation to testify.  And you can't hold it against him in any way because he has chosen not to speak.  It would be a violation of your oaths as jurors to even mention it in the jury room because the question for you to decide is whether the Commonwealth has proven each of the elements of offenses charged beyond a reasonable doubt, and a defendant is never required to prove to you that he is innocent. . . .

> The defendant is presumed to be innocent.  He need not prove that he is innocent. The burden of proof is upon the Commonwealth and the Commonwealth must prove beyond a reasonable doubt that the defendant is guilty of the charges made against him.  A verdict of guilty cannot be based upon [mere] probability, presumption, speculation or suspicion.

---

[7] Seales's direct appeal counsel dissociated himself from this claim pursuant to <u>Commonwealth v. Moffett</u>, 418 N.E.2d 585 (Mass. 1981), but included it in his briefs to the MAC and the SJC on Seales's behalf, S.A. at 35, 295-96.  Seales offered no additional briefing in either forum, and his brief here echoes the cursory arguments raised by counsel in state court.  Doc. No. 17 at 22-23.

S.A. at 1130-31.

Seales cites <u>Coffin v. United States</u>, 156 U.S. 432, 453 (1895), and suggests it requires a more "forceful" instruction characterizing the presumption of innocence as "'evidence in favor of the accused introduced by the law on his behalf.'" Doc. No. 17 at 23 (quoting <u>Coffin</u>, 156 U.S. at 460). The respondent argues that this claim is procedurally defaulted, noting no such objection was raised at trial and construing the MAC's decision as subjecting this claim to only limited review for "a substantial likelihood of miscarriage of justice." Doc. No. 21 at 45-49. Although the respondent is correct that such limited review would result in a finding of procedural default for federal habeas purposes, <u>see</u> § II(C), <u>infra</u>, the MAC did not explicitly invoke "miscarriage of justice" review in its brief discussion of this issue, <u>see</u> <u>Seales</u>, 2012 WL 5430953, at *2 n.8. As such, giving Seales the benefit of the doubt, the Court will consider this claim on its merits.

In its brief discussion of the claim, the MAC found "no error in the [trial court's] instruction on the presumption of innocence," describing the instruction as "clear and correct." <u>Seales</u>, 2012 WL 5430953, at *2 n.8. This conclusion was not contrary to, nor an unreasonable application of, clearly established federal law.

Neither federal law, as articulated by the Supreme Court, nor Massachusetts state law requires a trial judge to include specific language when instructing a criminal jury about the presumption of innocence. In fact, the Supreme Court has held that a trial court's "failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution." <u>Kentucky v. Whorton</u>, 441 U.S. 786, 789 (1979); <u>see</u> <u>Commonwealth v. Petetabella</u>, 944 N.E.2d 582, 589-90 (Mass. 2011) (focusing on whether overall jury charge contained "all elements required when instructing on the presumption of innocence," i.e., that

13

guilt may not be inferred from the fact of the indictment, that the verdict must be based on evidence rather than conjecture or speculation, and that the Commonwealth bears the burden of proof beyond a reasonable doubt). The Supreme Court has found error of constitutional dimensions where trial courts refused to instruct juries about the presumption of innocence only where such refusal implicated due process principles under the particular circumstances presented. See, e.g., Taylor v. Kentucky, 436 U.S. 478, (1978) (requiring the instruction where the charge given by the trial court was "rather Spartan," with a "truncated discussion of reasonable doubt"; and the prosecutor relied on "'facts' not in evidence," and invited jurors to infer guilt based on the indictment itself).

Seales, however, has cited no case in which the Supreme Court has mandated the use of precise language in such an instruction and found insufficient an explanation such as the one provided by the trial court here, and the Court is aware of no such precedent. The charge at issue twice referenced the presumption of innocence, specified that it was not a principle the jury should quickly pass over, linked it to the need to rely on evidence rather than speculation or conjecture, admonished jurors not to find guilt based on the fact of the indictment or the defendant's decision not to testify, and explained the burden of proof on the Commonwealth. S.A. at 1030-31. The MAC reasonably concluded that such an instruction was "clear and correct," a finding which is wholly consistent with federal law. Accordingly, Seales is not entitled to habeas relief on this claim.

        4. *Claim 9*

Seales alleges here, as he did in his direct appeal, that the protection against multiple punishments for the same offense contained in the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution was violated where: (a) he was convicted of two

counts of ABDW and one count of A&B arising from the February 2008 incident; and (b) he was convicted of both ABVRO and VRO arising from the October and November 2008 incidents. Doc. No. 1 at 16. With respect to the former set of charges, Seales argues the trial court "did not advise the jury that the [A&B] must be premised on an act distinct from the attacks with the mop and lighter fluid [which resulted in ABDW charges]." Doc. No. 17 at 24.

The MAC rejected this claim as to the ABDW and A&B charges after finding that "[e]ach indictment involved separate acts and the [trial court] instructed on the requirements for such[,] as well as the requirement of specific unanimity." Seales, 2012 WL 5430953, at *2. As to the November 2008 VRO charges, the MAC noted the lesser charge had been placed on file, but also adopted the Commonwealth's view that the ABVRO and VRO charges arose from separate conduct during the course of the same incident.[8] Id. at *2 n.9.

The MAC's resolution of Seales's Double Jeopardy claim, insofar as it relates to the ABDW and A&B charges, was neither contrary to, nor an unreasonable application of, clearly established federal law. The trial record establishes that the February 2008 incident was comprised of a series of acts by Seales, various of which could have sustained the A&B charge separate and apart from the assaults with the mop and the lighter fluid. For example, although Seales was acquitted of the ABDW charge arising from the use of a screwdriver, the jury could have credited Dussourd's testimony about Seales placing a screwdriver to her neck, S.A. at 554, and found that such conduct supported an A&B charge. Similarly, the jury could have based its verdict as to the A&B charge on testimony that Seales threw a glass at Dussourd, tore off her clothes, or struck her using his hands, all of which Dussourd described when asked about the

---

[8] On his direct appeal, Seales did not specifically press a challenge to the ABVRO and VRO charges arising from the October 2008 incident, presumably because his counsel understood that the VRO charge related to that incident had been dismissed by the trial court. S.A. at 1166.

February 2008 incident. Id. at 549-60, 680. The MAC reasonably concluded that the jury could have viewed this lengthy incident as a series of distinct and separate assaults, in some instances (according to Dussourd) separated by brief periods of calming. Cf. Blockburger v. United States, 284 U.S. 299, 302-03 (1932) (upholding two convictions for drug sales in close succession involving the same seller and the same buyer, where one sale was consummated before the other was solicited).

The A&B indictment does not specify the conduct from which it arose, merely citing the February 2008 date and charging Seales with "assault[ing] and beat[ing]" the complainant. S.A. at 113. As the MAC recognized, though, the trial court instructed the jurors on the requirement that they reach unanimous agreement "on the theory of culpability" where any particular indictment might rely on "different theories of culpability." S.A. at 1102; see also S.A. at 1108-09 (instructing as to another A&B charge that the jurors had to unanimously agree that an assault happened and also agree as to which specific act or touching constituted the assault). Under these circumstances, and applying the deferential standard of review required of a habeas court where the state court has passed on the merits of a claim, there is no basis in clearly established federal law for second-guessing the MAC's disposition of Seales's Double Jeopardy claim.

Insofar as the VRO convictions are concerned, there is no federal habeas jurisdiction over any claims related to those charges. The trial court dismissed one VRO charge and placed the other "on file" without entering any sentence thereon, pursuant to a Massachusetts state court practice. As neither VRO charge resulted in a "judgment of a State court" pursuant to which Seales is "in custody," habeas relief is not available for claims arising from those charges. 28 U.S.C. § 2254(a); see also § 2241(c)(3) (permitting habeas relief for individuals "in custody" in violation of federal law); Doc. No. 21 at 59 n.17 (citing cases in which other sessions of this

Court have rejected habeas claims arising from Massachusetts charges placed "on file" after guilty verdicts entered).

Accordingly, Seales's Double Jeopardy claim is meritless.

B.    <u>Non-Cognizable Claims</u>

    1.    *Legal Standard*

Habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>accord</u> 28 U.S.C. § 2254(a). It "is not an ordinary error-correcting writ" or a mere extension of a petitioner's direct appeals; it "exists to rescue those in custody from the failure to apply federal rights, correctly or at all." <u>Nadworny v. Fair</u>, 872 F.2d 1093, 1096 (1st Cir. 1989). Thus, "[f]ederal courts sitting in habeas must accept state court rulings on state law issues." <u>Rodriguez v. Spencer</u>, 412 F.3d 29, 37 (1st Cir. 2005); <u>see</u> <u>Swarthout v. Cooke</u>, 562 U.S. 216, 219 (2011) (emphasizing that "federal habeas relief is [not] available for an error of state law"); <u>see also</u> <u>Kater v. Maloney</u>, 459 F.3d 56, 61 (1st Cir. 2006) ("Errors based on violations of state law are not within the reach of federal habeas petitions unless there is a federal constitutional claim raised.").

Erroneous state court evidentiary rulings may form a basis for federal habeas relief only in very narrow circumstances. <u>See</u> <u>Coningford v. Rhode Island</u>, 640 F.3d 478, 484 (1st Cir. 2011) (involving evidence admitted pursuant to state prior bad acts rule). "[T]o trigger such relief, the state court's application of state law must be 'so arbitrary or capricious as to constitute an independent due process . . . violation.'" <u>Id.</u> (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990)); <u>accord</u> <u>Brown v. Roden</u>, No. 12-12000-RGS, 2014 WL 584261, at *10 (D. Mass. Feb. 11, 2014) (concerning state court refusal to give a jury instruction on a point of state law). As

the First Circuit has emphasized, it "will be [a] very rare [case]" in which "a state court's evaluative judgment [about an evidentiary matter] was such an unreasonable application of clearly established federal constitutional standards as to result in a fundamentally unfair trial." Kater, 459 F.3d at 64. As the petitioner, Seales bears the burden of establishing that his is one of those "very rare" cases. See Niland v. Hall, 280 F.3d 6, 10 (1st Cir. 2002).

Further, it is incumbent upon the habeas petitioner to frame his claims "in terms of violations of federal law," both in his federal petition and when exhausting the claims in state court. Cf. Kater, 459 F.3d at 61-62 (addressing federal questions arising from state law rulings regarding bad acts evidence and juror voir dire where the questions were presented in federal constitutional terms throughout the relevant state and federal proceedings).

### 2. *Claims 2, 3, 4, and 5*

Notwithstanding his summary invocation of the Due Process Clause in the introduction to his brief, see Doc. No. 17 at 1, four of Seales's claims are grounded in state law. Those claims – challenging the trial court's refusal to instruct the jury on a state-law question of mitigating factors related to assault with intent to murder, the admission of prior bad acts evidence and testimony about the complainant's mental state under state evidentiary law, and the admission of testimony by a DCF caseworker about her agency's concerns regarding Seales – were addressed in terms of state law in Seales's briefs on direct appeal. See Doc. No. 1 at 7, 8, 10, 12; S.A. at 74-85, 285-86, 288-92 (citing only state law). To the extent Seales's brief to this Court attempts to present these as federal claims by generally invoking the federal constitution and incorporating citations to a handful of federal decisions, most of which were not referenced in state court, such federal claims were not fairly presented and exhausted on direct appeal, nor would they survive the requisite procedural default analysis discussed below. See § II(C), infra.

The MAC considered and rejected each of these four claims in terms of state law. After concluding that no reasonable juror could have viewed Seales's use of the lighter fluid (the basis for the assault-with-intent-to-murder charge) as having been reasonably provoked by Dussourd's conduct, the MAC determined the trial evidence did not support a finding of mitigation under state law and, thus, that no such instruction was required.[9] See Seales, 2012 WL 5430953, at *1 & n.3 (also noting a "sufficient cooling-off period [had] occurred" and undermined Seales's mitigation theory, citing SJC precedent). Seales's claim regarding a jury instruction on mitigation is premised on a construct of state law – state court decisions interpreting the elements of state criminal statutes, evaluating whether and how certain types of evidence impact those elements, and discussing the manner in which the Commonwealth must prove them. Moreover, Seales has not established, nor does the record suggest, that the failure to give the requested instruction constituted "an error that so infected the proceedings that the trial could no longer be said to be fundamentally fair." Brown, 2014 WL 584261, at *10. As such, the claim is not cognizable on federal habeas review.

As to the admission of prior bad acts evidence,[10] the MAC concluded:

> The evidence of the physically abusive nature of [Seales's] relationship with the victim, including that he hit, punched, and kicked her, and his efforts to isolate the victim from family and friends, was properly admitted. Such evidence was probative of the hostile nature of the relationship, [Seales's] intent to commit

---

[9] The instruction at issue addresses the elements of assault with intent to kill under the relevant Massachusetts criminal statute, and explains that "[i]f there is evidence of mitigation" (i.e., evidence that the assault was unlawful, but that the intent to kill arose from "sudden passion induced by reasonable provocation, sudden combat or excessive force in self-defense"), then state law requires the Commonwealth to "prove beyond a reasonable doubt that the specific intent to kill was not the product of those mitigating circumstances." S.A. at 146-47.

[10] The evidence in question was witness testimony, primarily from Dussourd, and statements by the prosecutor regarding the history of the relationship between Seales and Dussourd. Seales specifically cites references to him as controlling and prone to using violence when he was upset, characterizations of the relationship as abusive, and testimony that Seales limited Dussourd's contact with family and friends. See Doc. No. 17 at 8-11.

several of the crimes, including the abuse prevention order violation, and also as evidence that explained the victim's behavior.

Id. at *1. Similarly, the MAC ruled that "evidence of [the complainant's] feelings surrounding [Seales's] acts charged in the indictment was properly admitted" where her "state of mind was a material issue at trial."[11] Id. at *1 n.4. These determinations were based on prior decisions by the SJC and Massachusetts evidentiary rules. See id. Seales's citations to First Circuit decisions reviewing on direct appeal introduction of evidence pursuant to the Federal Rules of Evidence do not supply his claims with federal constitutional dimensions. See Doc. No. 17 at 18; S.A. at 76.[12] Because Seales attacks a state court's judgments applying state evidentiary rules, and because the record demonstrates those judgments were "well within the universe of plausible evidentiary rulings," neither the prior-bad-acts claim nor the challenge to evidence of Dussourd's mental state merits federal habeas review. Coningford, 640 F.3d at 484-85.

Seales's characterization of the DCF caseworker's testimony as "[o]pinion testimony concerning [his] guilt [which] constitutes impermissible vouching," Doc. No. 17 at 20, likewise fails to support a cognizable federal claim.[13] The MAC was satisfied that the testimony in

---

[11] The state-of-mind evidence consisted of testimony by various witnesses describing Dussourd's demeanor and her emotional reactions to Seales's actions. See Doc. No. 17 at 11-13 (summarizing such testimony, including statements that Dussourd felt "awful," "upset," "sad," and "like a caged animal," seemed "frightened," and was "in complete denial"). Such evidence was introduced to explain, among other things, Dussourd's reluctance to report the abuse to police and those close to her.

[12] Seales's attempt to elevate his evidentiary challenges to federal habeas claims is helped even less by his citations to decisions by the Supreme Court and the D.C. Circuit reviewing on direct appeal challenges to state-of-mind evidence in murder cases, see Doc. No. 17 at 18-19, where federal evidentiary rules were at issue in those cases, the standards of review were not akin to the limited review permitted in the habeas context, and neither case was cited in any of Seales's state-court filings.

[13] The relevant testimony established that just before Dussourd ended her relationship with Seales in November 2008, the DCF caseworker had informed her "that DCF would be concerned for the safety of her children and would consider taking custody of her children" if she "remained in a relationship in which anything warranted a police response to her home." Seales, 2012 WL

question contained "neither an opinion of the defendant's guilt nor did it refer to the defendant's charged conduct," but rather was an attempt "to rehabilitate the victim's testimony [attacked on cross-examination] regarding the break-up and the circumstances in which it occurred." Seales, 2012 WL 5430953, at *2. Under the circumstances, the MAC found no error. Id. Once again, nothing in Seales's submissions or the record before the Court even remotely suggests that the "state court's evaluative judgment" regarding the relevance and admissibility of the DCF caseworker's statements "was such an unreasonable application of clearly established federal constitutional standards as to result in a fundamentally unfair trial." Kater, 459 F.3d at 64. Accordingly, this challenge cannot form the basis for federal habeas relief.

### C.   Procedurally Defaulted Claims

#### 1.   *Legal Standard*

A state prisoner is not entitled to habeas relief in federal court unless he has first exhausted his available remedies in state court. 28 U.S.C. § 2254(b); see O'Sullivan v. Boerkel, 526 U.S. 838, 839 (1999); Mele v. Fitchburg Dist. Court, 850 F.2d 817, 819 (1st Cir. 1988). To exhaust a claim, a petitioner must "fairly present" it to the state courts, "thereby alerting [the state courts] to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004); see O'Sullivan, 526 U.S. at 848; Coningford, 640 F.3d at 482; Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000) (requiring petitioners to raise federal claims "recognizably" in state court, making it "probable that a reasonable jurist would have been alerted to the existence of the federal question" (internal quotations omitted)). Failure to exhaust federal claims in state court results in procedural default of those claims for habeas purposes if "the court to which the petitioner would

---

5430953, at *2; see Doc. No. 17 at 5-6. This testimony was followed by a limiting instruction admonishing jurors not to consider it evidence of Seales's character or that Seales was a threat to his children. Seales, 2012 WL 5430953, at *2 n.6.

be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).

Even where a petitioner has fairly presented his federal claims in state court, procedural default occurs when the state court refuses to address such claims on the merits because of "a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman, 501 U.S. at 729); accord Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010); see Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012) ("[A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."). The purpose of the procedural default rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their claims in state court. Coleman, 501 U.S. at 732; see Martinez, 132 S. Ct. at 1316 (noting such rules are "designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism").

Massachusetts law imposes "a routinely enforced, consistently applied contemporaneous objection rule." Burks v. Dubois, 55 F.3d 712, 716 (1st Cir. 1995); see Commonwealth v. Lavoie, 981 N.E.2d 192, 197 n.8 (Mass. 2013); Mass. R. Crim. P. 22. The rule is "firmly established and consistently followed," Martinez, 132 S. Ct. at 1316, and the First Circuit repeatedly has held that it constitutes "an independent and adequate state procedural ground" that bars federal habeas review, Janosky, 594 F.3d at 44. Although Massachusetts appellate courts sometimes review claims for "miscarriage of justice" despite a failure to contemporaneously object, that sort of discretionary and limited review "does not in itself indicate that the court has determined to waive" the contemporaneous objection rule and consider the underlying claim on

its merits.  Tart v. Massachusetts, 949 F.2d 490, 496 (1st Cir. 1991); accord Janosky, 594 F.3d at 44; Burks, 55 F.3d at 726 n.2.  Federal courts will infer waiver of such a state procedural rule only if the state court makes it "reasonably clear that its reasons for affirming a conviction rest upon its view of federal law," rather than the relevant state procedural requirement.  Doucette v. Vose, 842 F.2d 538, 540 (1st Cir. 1988).

A petitioner may obtain review of defaulted claims only if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the[] claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; accord Martinez, 132 S. Ct. at 1316; Janosky, 594 F.3d at 44.  To demonstrate cause sufficient to excuse default, a petitioner must prove "some objective factor external to the defense impeded counsel's [or petitioner's] efforts to comply with the State's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986); accord Coleman, 501 U.S. at 753.  "[I]neffective assistance of counsel, so severe that it violates the Sixth Amendment, may constitute cause to excuse a procedural default," but only if "the petitioner exhausted his ineffective assistance claim in state court."  Janosky, 594 F.3d at 44 (citing Murray, 477 U.S. at 488-89).

To establish "actual prejudice," a petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  United States v. Frady, 456 U.S. 152, 168 (1982); accord Ortiz v. Dubois, 19 F.3d 708, 714 (1st Cir. 1994); Avila v. Clarke, 938 F. Supp. 2d 151, 171 (D. Mass. 2013).

If a petitioner seeks to establish a "fundamental miscarriage of justice" as an alternative to showing cause and prejudice, he must demonstrate "actual innocence."  See Schlup v. Delo,

513 U.S. 298, 324 (1995); Janosky, 594 F.3d at 46. This requires more than a summary assertion

of innocence; the petitioner must present "new reliable evidence" of his innocence. Schlup, 513

U.S. at 324. Moreover, he must demonstrate that the new evidence would make it more likely

than not that "no reasonable juror would find him guilty beyond a reasonable doubt." House v.

Bell, 547 U.S. 518, 538 (2006); see Schlup, 513 U.S. at 316 (concluding that even a "concededly

meritorious constitutional violation" is not sufficient to establish a miscarriage of justice and

excuse procedural default absent new and compelling evidence of innocence).

2. *Claims 6 and 7*

Seales's two remaining claims arise from the trial court's jury instructions. One

challenges the trial court's decision to provide a copy of a portion (but not all) of the instructions

to the jury in writing;[14] the other relates to an error in the written portion of the instructions that

Seales claims impermissibly shifted the burden of proof to him.[15] Doc. No. 1 at 13-14. Seales,

however, raised neither of these issues before the trial court, thus failing to preserve the claims

for full appellate review as required under Massachusetts law. Burks, 55 F.3d at 716; see S.A. at

166-77 (written portion of jury instructions); id. at 1060, 1105-07, 1110-11, 1125 (in-court

discussion of written portion of charge, objections raised to overall charge); id. at 85-89

---

[14] Without objection from either party, the trial court provided the jury with a written copy of the elements of each criminal offense at issue to aid in its deliberation. See S.A. at 166-77, 1060, 1125.

[15] Within the written instruction setting forth the elements of assault with intent to murder, the following error appeared: "Therefore, if after considering all the evidence you determine the Commonwealth has proven beyond a reasonable doubt each of the elements I have just defined, that is, that the defendant assaulted Marietta Dussourd and that the defendant possessed the specific or actual intent to kill the person assaulted while armed with a dangerous weapon, then you shall find the defendant guilty of assault with intent to murder. If the *defendant* has not proven each of those three elements beyond a reasonable doubt, the defendant is not guilty and you must so state." S.A. at 168 (emphasis added). This error apparently went unnoticed by the parties at trial, as no objection was made nor any correction suggested.

(implicitly admitting waiver in Seales's MAC brief by invoking "substantial likelihood of a miscarriage of justice" standard of review).

The MAC acknowledged Seales's waiver of these issues based on his failure to comply with the state contemporaneous objection rule, reviewing the claims only for miscarriage of justice. Seales, 2012 WL 5430953, at *2. In finding no "risk that justice miscarried," the MAC noted: the trial court admonished the jury that if her oral and written charges differed in any respect, her oral charge controlled; the SJC had approved of "any reasonable procedure by which all or portions of a judge's charge agreed to by the parties are made available in writing to a jury"; and the burden of proof was correctly and repeatedly described in the oral charge.[16] Id. (internal quotations and citations omitted).

Seales's failure to object to these aspects of the trial court's written jury instructions at the time they were given renders his federal claims procedurally defaulted. See Janosky, 594 F.3d at 44. The fact that the MAC reviewed the claims for miscarriage of justice does not excuse Seales's waiver nor salvage the claims for purposes of federal habeas review. Id. Nothing in the MAC's decision supports an inference that it disposed of the relevant claims based on "its view of federal law," rather than the obviously applicable state procedural requirement (i.e., the contemporaneous objection rule). See Doucette, 842 F.2d at 540. Therefore, unless Seales can show cause and prejudice for his default or demonstrate actual innocence, he is not entitled to federal habeas review of the claims. See Schlup, 513 U.S. at 324; Coleman, 501 U.S. at 750.

---

[16] In fact, the Court's review of the record reveals that the burden of proof was correctly stated in some fashion at least three dozen times during the final oral charge, and repeated once more in response to a question from the jury during its deliberations. See S.A. at 1086-104, 1107-09, 1124-37, 1146-47. Additionally, the Court notes that the error in the written charge does not exactly shift the burden of proof to the defendant by requiring him to prove his innocence; rather, it (wrongly) states that if the defendant *fails* to offer proof of the required elements, he must be *acquitted*. See S.A. at 168.

Nowhere in Seales's submissions to this Court does he even acknowledge his default of these claims, let alone cite an "objective factor external to the defense" which caused him to waive the claims under state law. <u>Murray</u>, 477 U.S. at 488. He does not allege his trial counsel was ineffective in this or any other regard, nor has he exhausted any such ineffectiveness claims in state court. Similarly, he has not shown, and the record does not support a finding, that the alleged errors related to the written portion of the jury instructions "infect[ed] his entire trial with error of constitutional dimensions." <u>Frady</u>, 456 U.S. at 168. Finally, Seales has neither asserted he is actually innocent of the charges in this case nor presented "new reliable evidence" of his innocence. <u>Schlup</u>, 513 U.S. at 324. Under these circumstances, there is no basis for excusing his procedural default, and his defaulted claims are not eligible for review by this Court.

III.   <u>CONCLUSION</u>

Because each of his claims fails either on its merits, because it arises from matters of state law, or due to insurmountable procedural default, Seales's habeas petition is DENIED.[17]


SO ORDERED.


  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[17] As "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), no certificate of appealability shall issue. Seales has cited no clearly established federal law, as enunciated by the Supreme Court, which the state courts considering his direct appeal either contravened or applied unreasonably. Moreover, a majority of his federal claims are doomed by his failure to exhaust them on direct review as anything other than pure state-law challenges, or by his failure to comply with state procedural requirements which are routinely enforced and consistently applied. For these reasons, which are more fully set forth above, Seales is not entitled to a certificate of appealability.